# In the United States Court of Federal Claims

|   |   |
|---|---|
| SAMUEL J. MAY, | |
| *Plaintiff,* | |
| v. | No. 21-1496C |
| | (Filed: July 13, 2022) |
| THE UNITED STATES OF AMERICA, | |
| *Defendant.* | |

*Samuel J. May*, *pro se*, Lynnwood, WA.

*Kristin E. Olson*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

Plaintiff Samuel J. May brings the present Complaint, alleging a number of claims related to a settlement agreement between the United States and his former employer, the pharmaceutical company Amgen, Inc.  Previously, in 2010, he filed a *qui tam*[1] complaint alleging that Amgen violated the False Claims Act ("FCA").[2]  That complaint was dismissed for failure to prosecute, but soon afterward, Amgen and the United States reached a multimillion-dollar settlement stemming from several similar *qui tam* complaints to which Mr. May was not a

---

[1]  The filings in this case do not consistently italicize the phrase "*qui tam*."  This Opinion will italicize the phrase without further noting these alterations when it appears in quoted material.

[2]  Under the FCA, a *qui tam* action is a lawsuit in which a private party referred to as a relator brings a claim "in the name of the Government."  31 U.S.C. § 3730(b); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768–69 (2000).  If the government opts not to intervene in a case and the relator wins a favorable judgment or reaches a settlement, the relator "shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages," which "shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement."  31 U.S.C. § 3730(d)(2).  A *qui tam* complaint will be dismissed if substantially the same allegations or transactions have been publicly disclosed, but there is an exception for actions brought by the Attorney General or a relator who is "an original source of the information."  *Id.* § 3730(e)(4).

party.  Having unsuccessfully sought relief in federal district courts and courts of appeals, he now brings new claims to this Court.

The Government moves to dismiss pursuant to Rules 12(b)(1) and (6) of the Rules of the U.S. Court of Federal Claims ("RCFC").  It argues that *qui tam* actions are beyond this Court's jurisdiction and that Mr. May's contract claims are time-barred and fail to demonstrate the existence of a contract.  The Government also contends that this Court lacks jurisdiction over Mr. May's tort and due process claims and that his Fifth Amendment theories fail to state a claim upon which relief can be granted.  Mr. May moves to supplement the record, for a default judgment, and for judgment on the pleadings.

For the reasons set forth below, this Court lacks subject matter jurisdiction over the Complaint.  Mr. May's contract and Fifth Amendment claims are time-barred, and his tort and due process claims are not based on a money-mandating provision of law.  Therefore, the Court **GRANTS** the Government's Motion to Dismiss, and the other outstanding motions are **DENIED** as moot.

**I.      Background**

     **A.      Factual background**

The following facts are based on the allegations in Plaintiff's Complaint, which the Court accepts as true solely for the purpose of ruling on the Government's pending Motion to Dismiss.  *See Bioparques de Occidente, S.A. de C.V. v. United States*, 31 F.4th 1336, 1343 (Fed. Cir. 2022); *Celgene Corp. v. Mylan Pharms., Inc.*, 17 F.4th 1111, 1128 (Fed. Cir. 2021); *see also* Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket No. 18.  The Court also considers filings in Plaintiff's prior lawsuits to determine whether this Court has jurisdiction to adjudicate the instant case.  *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) (explaining that the court may "inquire into jurisdictional facts that are disputed" when ruling on a motion to dismiss under RCFC 12(b)(1)).

        **1.      Arbitration and Related Litigation**

Mr. May was employed by Amgen from 2002 until he resigned to take a position at a different company in 2006.  Def.'s App. at 42, 45, Docket No. 18-1; *see* Compl. ¶ 18, Docket No. 1.  In 2007, he sued Amgen for wrongful termination, discrimination, and related claims.  Def.'s App. at 1–11 (Mr. May's California state court complaint).  Among his other claims, Mr. May alleged that Amgen retaliated against him because he had "brought attention to the fact that Amgen, its supervisors, and employees . . . were in violation of federal rules and regulations in having open protocols and because Plaintiff refused to simply ignore such open protocols which would have constituted an illegal and unethical act."  *Id.* at 5 (cleaned up).

Mr. May voluntarily dismissed the complaint because of an arbitration clause in his employment contract. *Id.* at 34; *see* Pl.'s Ex. 5 at 1–2, Docket No. 1-6 (arbitration agreement).[3] One year later, in 2008, he brought an arbitration demand for the same underlying claims. Compl. ¶ 22; Def.'s App. at 12–31 (Mr. May's arbitration demand). On October 14, 2011, the arbitrator found against Mr. May and in favor of Amgen. Def.'s App. at 40–53 (arbitration award).[4] That December, Mr. May's motion for reconsideration of the arbitration award was denied. *Id.* at 54–57 (order denying Mr. May's motion for reconsideration). Amgen then successfully moved to confirm the arbitration award in Colorado state court. Compl. ¶ 42; *see also* Def.'s App. at 58–64 (Amgen's motion to confirm arbitration award), 65–68 (judgment and order confirming arbitration award).

Over the next several years, Mr. May attempted, through lawsuits in state and federal courts, to either vacate or modify the arbitration award. Compl. ¶ 42. All of these lawsuits were dismissed. *Id.*; *see also* Def.'s App. at 69–70 (state court order denying Mr. May's motion to vacate arbitration award), 156–57 (district court order denying motion for leave to file motion for reconsideration), 161–62 (Ninth Circuit order summarily affirming the district court's order), 163 (Ninth Circuit order denying reconsideration). Finally, the Supreme Court denied Mr. May's petition for certiorari in 2015. Compl. ¶ 42.

Despite Mr. May's repeated attempts to have the arbitration award vacated or modified, he nonetheless appears to interpret the arbitrator's decision as endorsing his claim for relief. He states that the arbitrator "ruled May's contracts permitted him for legal remedy" and found that his claim "satisf[ied] three of the four . . . elements for threshold relief under state law." *Id.* ¶ 25; *see also* Pl.'s Mot. for J. on the Pleadings at 6, Docket No. 29 ("May's offer of proof shows that he met the threshold requirement for three of the four Lorenz[] elements."). In fact, the arbitrator found that he was *not* entitled to relief and did *not* find that he had satisfied three of the four factors of the relevant test. Def.'s App. at 51–52. She concluded that because he failed one factor of the conjunctive test, as well as at least one other factor, his claim must be dismissed. *Id.*

### 2. *Qui Tam* Complaint and Related Litigation

On June 11, 2010, while Mr. May's arbitration was pending, he filed a *qui tam* complaint, *pro se*, under the FCA in the U.S. District Court for the Northern District of California. Compl. ¶ 23; *see* Def.'s App. at 164–289 (Mr. May's *qui tam* complaint). The *qui tam* complaint "alleged that Amgen had inflated drug prices for unapproved uses, distributed substandard or adulterated [drugs] into interstate commerce, and had sold to third party government entities causing improper reimbursements by the Centers for Medicaid and Medicare Services." Compl. ¶ 24. Specifically, Mr. May alleged that Amgen made false claims to the Government

---

[3] The documents within the exhibits to Plaintiff's Complaint are not uniformly paginated. For these exhibits, the Court cites to the page numbers generated by the Case Management/ Electronic Court Filing system. *See generally* Pl.'s Exs. 1–7, A–C, Docket Nos. 1-2 to 1-11.

[4] Because Defendant's Appendix includes several documents from prior litigation to which Plaintiff refers, this Opinion cites to the Appendix for consistency and ease of reference even where Plaintiff has included the same documents as exhibits. *See generally* Def.'s App.

for payment or approval of regulatorily non-compliant, tainted, or misbranded units of two drugs, Aranesp and Epogen. Def.'s App. at 218–21. He alleged that Amgen took steps to mask manufacturing deficiencies of these drugs and that it "promoted off-label uses of Aranesp and Epogen doses that were neither effective nor safe, all for the purpose of significantly increasing their sales." *Id.* at 200 ¶ 97 (cleaned up). He also contended that Amgen misrepresented the cost of producing these drugs by falsely claiming to assign resources to quality control, allowing it to charge Medicare and Medicaid more than regulations permitted. *Id.* at 205–06 ¶¶ 115–16.

In September 2010, the United States elected not to intervene in Mr. May's *qui tam* complaint and suggested that the court dismiss the case unless Mr. May obtained counsel within 60 days of the court's order. Def.'s App. at 290–92 (government's declination notice); *see* Compl. ¶ 30. The Government's notice observed that "the Ninth Circuit has held that a *pro se* relator cannot prosecute a *qui tam* action on behalf of the United States under the False Claims Act." Def.'s App. at 291 (citing *United States ex. rel. Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1126–28 (9th Cir. 2007)).

Mr. May retained a law firm but it terminated its representation shortly thereafter. Pl.'s Ex. A at 10–13, Docket No. 1-9; Pl.'s Resp. to Def.'s Mot. at 9 ¶¶ 29–31, ("Pl.'s Resp."), Docket No. 22. He retained new counsel, but that law office also ended its representation without ever noticing a court appearance, claiming that Mr. May's "failure to disclose [his] prior arbitration agreement, which covers many of the same claims in [his] *qui tam* Complaint, is an unfortunate error which effectively terminates our legal representation." Pl.'s Ex. A at 15–16; *see* Pl.'s Resp. at 9–10 ¶ 32.[5] On January 5, 2012, Mr. May's *qui tam* suit was dismissed for failure to prosecute because he was not represented by counsel. Def.'s App. at 293–94 (order dismissing *qui tam* action); Pl.'s Resp. at 10 ¶ 34.

In December 2012, the United States, Amgen, and multiple relators entered into a $762 million settlement agreement for FCA-related claims ("the Amgen Settlement"). Compl. ¶ 31; *see* Def.'s App. at 336–85 (the Amgen Settlement). Similar to Mr. May's *qui tam* complaint, the settlement agreement included the allegation that "Amgen knowingly promoted the sale and use of Arenesp for indications which were . . . not approved by the Food and Drug Administration" and "for dosing intervals, amounts, or regimens that were . . . not approved by the FDA." Def.'s App. at 339; *see* Compl. ¶ 31. More than three years later, Mr. May moved to reopen his *qui tam* complaint, seeking a share of the settlement. Def.'s App. at 295–330 (Mr. May's motion to reopen the case). The U.S. District Court for the Northern District of California denied the motion and the Ninth Circuit dismissed his appeal. *See* Def.'s App. at 331 (district court order denying motion to reopen the case), 334–35 (Ninth Circuit order dismissing appeal).

---

[5] In his Motion for Judgment on the Pleadings, Mr. May refers to a third "set[] of attorneys" that also "withdrew representation after learning the neutral arbitrator had concurrent jurisdiction for all claims including those by assignment." Pl.'s Mot. for J. on the Pleadings at 8. However, this is the only reference in the pleadings or exhibits to a third attempt to obtain counsel for the *qui tam* claim.

### 3. District of Colorado Litigation

On March 10, 2017, eight days after the Ninth Circuit dismissed Mr. May's appeal, he filed a complaint in the U.S. District Court for the District of Colorado against Amgen and various federal entities. Compl. ¶ 43; *see* Def.'s App. at 386–418 (Mr. May's district court complaint). He alleged both contract and tort claims and sought a relator's share of the value of the Amgen Settlement, or in the alternative, a share of Amgen's value. Compl. ¶ 43; *see* Def.'s App. at 386–418. The district court dismissed the contract claims without prejudice for lack of subject matter jurisdiction and granted the defendants' summary judgment motion on the tort claims, dismissing them with prejudice. Pl.'s Ex. 2 at 17, Docket No. 1-3 (district court order dismissing Mr. May's complaint). Mr. May appealed, and on December 10, 2020, the Tenth Circuit affirmed. Pl.'s Ex. 1 at 6–7, Docket No.1-2 (Tenth Circuit order affirming the district court's order). It denied rehearing by a panel or en banc on January 22, 2021. Def.'s App. at 419 (Tenth Circuit order denying motion for rehearing).

Although Mr. May appealed the decision from the District of Colorado, he appears to interpret it as endorsing his claim to relief. He states that the magistrate judge "found . . . that May's damages stemmed from every event and exceeded the $10,000 jurisdictional amount" and that he "further recommended May's legal remedy for breach of contract claims belong in the Court of Federal Claims." Compl. ¶ 46. Mr. May incorrectly states that the magistrate judge's report and recommendation "shows May's breach of contract damages exceeded one hundred million dollars" and that the District Court and Court of Appeals accepted these calculations. *Id.* ¶¶ 46–47; *see also* Pl.'s Reply in Supp. of Mot. for Default J. at 9, Docket No. 28 ("Federal courts estimated May's damage claim for contract breaches to exceed one hundred million dollars."). In fact, the magistrate judge merely found that Mr. May "*seeks* damages of over $100,000,000." Pl.'s Ex. 3 at 22, Docket No. 1-4 (emphasis added). Far from endorsing Mr. May's claim, the magistrate judge added that Mr. May "does not plausibly allege that he ever had a contractual relationship with the Federal Defendants." *Id.*

### 4. Mr. May's Present Complaint

Mr. May's theory seems to be that by filing his ill-fated *qui tam* complaint, he alerted the United States to Amgen's misconduct under the FCA and "ultimately facilitated the Defendants to recover proceeds from Amgen." Compl. ¶ 37. He insists that the settlement "encompassed FCA and non-FCA fines, fees, and forfeitures for the same [pharmaceutical products] alleged in May's valid *qui tam* complaint and arbitral outcome." *Id.* ¶ 31. Mr. May argues that because he provided information which helped the United States secure a considerable settlement from Amgen, he is entitled to a relator's share of that settlement. *Id.* ¶ 37.

Specifically, Plaintiff makes six claims, although he acknowledges that one may be dismissed. The first and second causes of action concern his employment agreement with Amgen. *Id.* at 11, 13. Specifically, Plaintiff alleges breach of contract and violation of the implied covenant of good faith and fair dealing. *Id.* He alleges that "Federal and Colorado law holds the Non-Signatory Defendants liable for damages when the contracts [sic] clauses at issue were drawn in their favor to protect public health, safety or welfare and directly benefited [them]," *id.* ¶ 51, and that Defendant "greatly benefited through Plaintiff's obligations to

5

arbitrate his claims and filing the valid *qui tam* complaint in [sic] behalf of the United States . . . which resulted in [a] large recovery from Amgen's 2012 settlement," *id.* ¶ 54.

The third and fourth causes of action concern the FCA and Mr. May's *qui tam* complaint. *Id.* at 15–16. Specifically, Plaintiff alleges that "the FCA in itself created or formed a basis for legal contract because *qui tam* relator May is not an ordinary plaintiff but deputized by Congress to ferret out fraud." *Id.* ¶ 68. Mr. May claims that the Government breached this supposed contract and violated the implied covenant of good faith and fair dealing. *Id.* at 15–16. Although he concedes that the breach of contract claim can be dismissed, Plaintiff maintains his claim as to the covenant of good faith and fair dealing. Pl.'s Resp. at 17–18.

Fifth, Mr. May alleges that the Government violated the Fifth Amendment (either under the Takings Clause or by illegally exacting his property), the Equal Protection Clause, and 42 U.S.C. § 1983. Compl. at 17; *see* Pl.'s Resp. at 17–18. His final claim is for negligence and violations of the Equal Protection Clause, as well as violations of the First Amendment and 42 U.S.C. § 1983. Compl. at 18. He seeks declaratory relief and monetary damages "for withholding payment of [the] relator share" from the Amgen Settlement, as well as punitive, consequential, and future damages. *Id.* ¶ 93.

### B. Procedural History

Plaintiff filed the instant Complaint on June 15, 2021. *See* Compl. The Government filed a Motion to Dismiss pursuant to RCFC 12(b)(1) and (6) on January 18, 2022. *See* Def.'s Mot. Plaintiff filed his Response on March 8, 2022, to which the Government did not reply. *See* Pl.'s Resp. Plaintiff subsequently filed a Motion to Supplement the Record on April 20, 2022; the Government responded on May 4, 2022. *See* Mot. to Suppl. the R., Docket No. 23; Resp. to Mot. to Suppl., Docket No. 24. Two days later, on May 6, 2022, Plaintiff filed a Motion for Default Judgment. Docket No. 25. The Government responded on May 19, 2022, Docket No. 27, and Plaintiff replied on May 24, 2022. On June 24, 2022, Plaintiff filed a Motion for Judgment on the Pleadings. *See* Pl.'s Mot. for J. on the Pleadings.

## II. Jurisdiction and Standards of Review

The Tucker Act grants the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Although the statute waives sovereign immunity, it does not create a substantive cause of action; "the plaintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008); *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (stating that "[i]f a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit," but that "[i]t nonetheless remains true that the Tucker Act 'does not create any substantive right enforceable against the United States for money damages'" (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980))).

A court considering a motion to dismiss must accept all well-pled facts as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (collecting cases); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). When jurisdictional facts are challenged, such as under RCFC 12(b)(1), the plaintiff must demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Although courts must liberally construe *pro se* plaintiffs' filings, plaintiffs still bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019) (citing *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

Under RCFC 12(b)(6), denial of a motion to dismiss for failure to state a claim is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss under RCFC 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### III. Discussion

#### A. RCFC 12(b)(1) Challenges to Subject Matter Jurisdiction

##### 1. Statute of Limitations

As an initial matter, the Government contends that Plaintiff's contract claims are time-barred because they "appear to be based on his arbitration agreement with Amgen and the Government's FCA settlement with Amgen," and "more than six years have passed since those agreements were executed." Def.'s Mot. at 13 n.5. All of Plaintiff's contract allegations treat the Amgen Settlement's December 2012 execution date as the most recent, relevant government conduct. *See* Compl. ¶¶ 54, 63, 69, 71, 73, 81–82, 87 (referring to the "2012 settlement," "December 2012 settlement," "2012 large settlement," and "2012 global settlement"). This places his claims well beyond the six-year statute of limitations and, accordingly, outside this Court's subject matter jurisdiction. *See* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.").

Indeed, although the Government only raises the statute of limitations with regard to Plaintiff's contract claims, "a court has a duty to inquire into its jurisdiction to hear and decide a case," and the statute of limitations applies with equal force to his Fifth Amendment claims. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342–43 (Fed. Cir. 2001); *see* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Mr. May alleges a "compensable taking that . . . occurred because May was wholly excluded from the 2012 settlement," Compl. ¶ 81, or "alternatively, illegal exaction because proceeds entitled to and paid by Amgen [were] improperly with-held from him," Pl.'s Resp. at 18. As with his contract claims, the relevant government conduct occurred in 2012. And in light of Mr. May's extensive litigation history, he was undoubtedly aware of the relevant

7

government activity more than six years before he filed his present Complaint. *See* Def.'s App. at 150 (referring to the 2012 Amgen Settlement in a filing dated May 1, 2015).

Plaintiff offers little to counter this conclusion. He does allude to the court's "continuing claim doctrine," Compl. ¶ 41, by which "the government allegedly commit[s] a distinct wrong" that creates a new six-year limitations period "[e]ach time . . . a periodic claim for pay ar[ises]," *Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997). He also alleges that the Government "continue[s] to evade full payment of plaintiff's breach of contract damages," and that he is "unduly harassed continually [as] a whistleblower/snitch to date." Compl. ¶¶ 56, 83. However, these assertions do not bring Mr. May's contract or Fifth Amendment claims within the statute of limitations.

Mr. May's invocation of the continuing claim doctrine fails because he does not refer to any event within this Court's six-year statute of limitations that could constitute a breach of contract or any continuing duty on the part of the Government. *See Brown Park*, 127 F.3d at 1458. His references to the Government "evad[ing] full payment" and his "continual[]" harassment, Compl. ¶¶ 56, 83, fair no better because "a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim," *Brown Park*, 127 F.3d at 1456. Because "[a] cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit," the statute of limitations has lapsed, and this Court lacks subject matter jurisdiction over Plaintiff's contract and Fifth Amendment claims. *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003).

Only the most expansive interpretation of Mr. May's Complaint spares his remaining claims from dismissal on these grounds. Plaintiff describes his years of legal proceedings related to the *qui tam* complaint, which extended, on and off, from April 2016 through January 2021. Compl. ¶¶ 42–49; *see, e.g.*, Def.'s App. at 295–330 (Mr. May's April 2016 motion to reopen his *qui tam* case); *id.* at 419 (order denying rehearing of Mr. May's Tenth Circuit case). To the extent Plaintiff insists that his prior litigation demonstrates any Government wrongdoing, such an allegation would fall within the statute of limitations (although these claims fail on other grounds, as explained below).

### 2. *Qui Tam* Claims

While the timing of Plaintiff's Complaint is fatal to most of his claims, the nature of the claims is equally sufficient to compel dismissal. As Defendant correctly notes, "[a]t the heart of Mr. May's complaint is a claim that he should have received a portion of the Government's FCA recovery against Amgen." Def.'s Mot. at 11. The Government argues that this Court lacks subject matter jurisdiction over Mr. May's claims because "Mr. May would have to show that he was entitled to recover under the FCA as a proper *qui tam* plaintiff," and "[t]he Court of Appeals for the Federal Circuit has held that only district courts can make such a determination." *Id.*

Defendant refers to *LeBlanc v. United States*, in which the Federal Circuit held that "[t]he Court of Federal Claims has no authority to make [the] determination" that the plaintiff "had a valid *qui tam* suit under the False Claims Act . . . because *qui tam* suits may only be heard in the district courts." 50 F.3d 1025, 1031 (Fed. Cir. 1995) (citing 31 U.S.C. § 3732(a)); *see* Def.'s Mot. at 11, 15, 18, 20. Because Plaintiff's claims rest on his alleged entitlement to a relator's

share of an FCA settlement, Defendant argues that this Court would need to determine whether Plaintiff had a valid *qui tam* suit, which is beyond the Court's subject matter jurisdiction. Def.'s Mot. at 11–12.

Mr. May counters that *LeBlanc* is inapposite. Pl.'s Resp. at 2–3. He argues that the court in that case determined that it lacked jurisdiction because the public disclosure bar (which requires dismissal of *qui tam* claims based on publicly disclosed, substantially similar allegations) foreclosed the plaintiff's claims and the plaintiff was not an "original source" under the FCA. *Id.* He insists that his claim should survive the Motion to Dismiss because he is an original source and not subject to the public disclosure rule. *Id.*

This Court cannot address Plaintiff's *qui tam* claims. Doing so would require this court to determine whether Plaintiff "had a valid *qui tam* suit under the False Claims Act," and is entitled to a share of the Amgen Settlement. *LeBlanc*, 50 F.3d at 1031. But as the Federal Circuit held in *LeBlanc*, "[t]he Court of Federal Claims has no authority to make that determination because *qui tam* suits may only be heard in the district courts." *Id.* "It is unequivocal that this court lacks jurisdiction to hear *qui tam* suits." *Downey v. United States*, No. 19-899C, 2019 WL 4014204, at *3 (Fed. Cl. Aug. 23, 2019) (citing *LeBlanc*, 50 F.3d at 1030–31). Accordingly, Plaintiff's claims seeking a relator's share of the Amgen Settlement must be dismissed.

### 3. Contract Claims

In addition to filing his complaint outside the statute of limitations, Mr. May also lacks standing to bring his contract claims. To have standing, Mr. May must demonstrate that he is in contractual privity with the United States or that he meets one of the recognized exceptions to the privity requirement. *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003) ("To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States." (citing *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984)). The Federal Circuit has held that exceptions include suits "by an intended third-party beneficiary, by a subcontractor by means of a pass-through suit when the prime contractor is liable to the subcontractor for the subcontractor's damages, and by a Miller Act surety for funds improperly disbursed to a prime contractor." *First Hartford Corp. Pension Plan & Tr. v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999) (citations omitted); *see also Anderson*, 344 F.3d at 1352 ("Without either direct privity or third-party beneficiary status, [a plaintiff] lack[s] standing to sue the government and cannot therefore recover damages from the United States."). Mr. May has not demonstrated contractual privity with the United States and fails to meet any of these exceptions.

#### a. Arbitration Clause, Protective Order, and Arbitration Award

Plaintiff's first and second causes of action refer to his employment agreement's arbitration clause. Compl. ¶¶ 52, 60. His Response to the Motion to Dismiss elaborates on these claims, citing the arbitration clause, the protective order from his arbitration with Amgen, and the arbitration award as the "collective contracts at issue." Pl.'s Resp. at 16.

Mr. May seems to suggest that he is an assignee of the United States' claims against Amgen for violation of federal law and that he vindicated those rights first by raising Amgen's potentially unlawful conduct during arbitration and then by filing his *qui tam* complaint. *See id.* at 25–26; Pl's Mot. for Default J. at 3 ("The government continues to evade May's compensation for performance of his assigned contract claims in completing arbitration."). In support, he cites the arbitration clause of his employment agreement, which included "claims for violation of any federal, state, or other governmental law, constitutional provision, common law, statute, regulation, or ordinance." Compl. ¶¶ 52, 60 (quoting Pl.'s Ex. 5 at 2). In his view, "[t]he United States is a real party of interest in its partially assigned claim to May and was a non-signatory to the [arbitration] agreement under common law (State & Federal) and anticipated arbitral decision." Pl.'s Resp. at 25; Pl.'s Mot. for Default J. at 4 ("As non-signatory to the contracts Defendant is liable for the monetary relief sought.").

Mr. May contends that his independent investigation of Amgen's practices and his *qui tam* complaint alerted the Government "that Amgen was suspected in violating 'federal, state, or other governmental law, constitutional provision, common law, statute, regulation, or ordinance' which then ultimately advanced the large comprehensive recovery." Compl. ¶ 35; *see also* Pl.'s Mot. for J. on the Pleadings at 10 ("As an interested private party May's relentless pursuit to assist in deterring would-be fraudsters helped the United States . . . to benefit from May's efforts."). Mr. May adds that the United States benefited from the protective order that governed his arbitration proceeding and prevented him from discussing Amgen's alleged wrongdoing. Pl.'s Resp. at 26–27, 30–32. He seems to suggest that the protective order somehow facilitated the Government's settlement with Amgen and conferred a benefit upon the United States. *Id.* at 30–32. Finally, he argues that the Government was a party to the arbitration award because it assigned claims to Mr. May and "has a substantial interest in rewarding those who assist in the enforcement of government policy." *Id.* at 34.

Plaintiff fails to demonstrate privity of contract between himself and the United States with regard to the arbitration agreement, the protective order, or the arbitration award, because the United States was not a party to any of them. He also fails to establish that any of the exceptions to the requirement for privity apply. "Proof of the requisite intent [to benefit a third-party] is no small matter, for the Supreme Court has recognized the exceptional privilege that third-party beneficiary status imparts. The privilege should not be granted liberally." *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005) (citation omitted); *see also German All. Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.").

Even if the United States theoretically derived some benefit from Mr. May's employment contract with Amgen, the arbitration protective order, or the arbitration award, such benefit is incidental. But "incidental beneficiaries of [a] contract [have] no rights to enforce the contract." *Glass v. United States*, 258 F.3d 1349, 1355 (Fed. Cir. 2001). In order to establish standing as a third-party beneficiary of a contract, "a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." *Id.* at 1354; *see also Castle v. United States*, 301 F.3d 1328, 1339 (Fed. Cir. 2002) (holding that certain plaintiffs were "at most incidental beneficiaries" of a contract, and "[a]s such, they lack[ed] standing to sue for breach of the alleged contract"). None of the

"collective contracts at issue" evince any deliberate attempt to confer a direct benefit upon the Government. *See* Pl.'s Resp. at 16. Therefore, any incidental benefit, if one exists at all, is insufficient to establish standing.

Moreover, subject matter jurisdiction under the Tucker Act is limited to contracts with the United States and does not extend to contracts to which the United States is a third-party beneficiary. "The exception to the privity requirement . . . encompasses only suits by intended third-party beneficiaries of government contracts against the Government as a party to the contract," but not "suits against the Government by a party to a private contract on the basis that the Government is an intended beneficiary of the private contract." *Wagner v. United States*, 71 Fed. Cl. 355, 363–64 (2006). Indeed, "the beneficiary makes no return promise and incurs no duties by virtue of the contract" and "a rule allowing claims against the Government on the basis that it is a third-party beneficiary of a private contract would conflict with the plain language of the Tucker Act," which "grants this court jurisdiction over claims founded 'upon any express or implied contract *with the United States*.'" *Id.* at 364 (first citing *Fireman's Fund Ins. Co. v. United States*, 909 F.2d 495, 500 (Fed. Cir. 1990); and then quoting 28 U.S.C. § 1491(a)(1)).

Because Plaintiff fails to demonstrate privity of contract with the United States or any of the exceptions to the privity requirement, he lacks standing. As a result, this Court does not have subject matter jurisdiction over the breach of contract claim. Furthermore, because there was no contract, there can be no claim for breach of the implied covenant of good faith and fair dealing. "[B]ecause the existence of the covenant of good faith and fair dealing depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed." *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (quoting *Mountain Highlands, LLC. v. Hendricks*, 616 F.3d 1167, 1171 (10th Cir. 2010)) (collecting cases).

### b. FCA and Amgen Settlement

Plaintiff's third and fourth causes of action refer to the FCA. Compl. at 15–16. He appears to argue either that the FCA put him into contractual privity with the United States when he filed his *qui tam* complaint or that he is an intended third-party beneficiary of the Amgen Settlement.

Mr. May suggests that he is in privity with the United States because "the FCA in itself created or formed a basis for legal contract because *qui tam* relator May is not an ordinary plaintiff but deputized by Congress to ferret out fraud." *Id.* ¶ 68. He claims that "*qui tam* provisions under the FCA created an enforceable unilateral contract" and that his "specific performance of the contracts and . . . valid *qui tam* complaint ultimately facilitated" the Amgen Settlement. *Id.* ¶¶ 36–37. But he also states that the Amgen Settlement, rather than the FCA itself, is the contract at issue. He insists that, "[a]s a former Amgen employee[,] May is a direct beneficiary," and that compliance requirements included in the Amgen Settlement make him an intended beneficiary because he had previously expressed interest in a corporate compliance position at Amgen. Pl.'s Resp. at 37–39. Mr. May also appears to blur these theories of relief, stating that "[c]laims brought under § 3729 *et seq.* entitle[] *qui tam* relator May to recover from Amgen's 2012 settlement." Compl. ¶ 69.

11

Mr. May describes what is at best an implied-in-law contract. As the Federal Circuit has explained, "implied-in-law contracts 'impose duties that are deemed to arise by operation of law' in order to prevent an injustice, whereas implied-in-fact contracts are 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred . . . from conduct of the parties.'" *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (quoting *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998)). The Court of Federal Claims' subject matter jurisdiction "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996) (collecting cases); *Lumbermens Mut. Cas. Co.*, 654 F.3d at 1316 & n.8 (collecting cases).

Furthermore, Defendant is correct that Plaintiff fails to demonstrate contractual privity with the Government. *See* Def.'s Mot. at 15–17. Defendant compares the present case to *Woods v. United States*, 122 F. App'x 989 (Fed. Cir. 2004), in which the Federal Circuit "rejected the theory that a *qui tam* action creates a contract between the relator and the Government within this Court's jurisdiction." Def.'s Mot. at 16 (citing 122 F. App'x at 989–90). As the Defendant notes, the plaintiff in *Woods* brought a *qui tam* suit under the FCA, in which the United States initially decided not to intervene. *Woods*, 122 F. App'x at 989. However, in that case, the Government changed course and intervened, asserting the state secrets privilege and seeking dismissal. *Id.* at 989–90. The plaintiff then brought an action in the Court of Federal Claims, alleging a violation of the implied covenant of good faith and fair dealing. *Id.*

The Court of Federal Claims dismissed the complaint and the Federal Circuit affirmed, holding that even if "the filing of a *qui tam* action creates an implied contract with the government[,] . . . [a]ny such implied contract . . . does not arise from 'a meeting of the minds,' but arises only from an imputed promise to perform a legal duty." *Id.* at 991 (citing *Hercules, Inc.*, 516 U.S. at 424). Accordingly, such a contract would be "a contract implied in law," which "cannot form the basis for jurisdiction in the Court of Federal Claims under 28 U.S.C. § 1491(a)(1)." *Id.* (citing *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997)). Defendant states that in the instant case, "as in *Woods*, Mr. May's allegations of a contract with the Government fail to describe a 'meeting of the minds'; they instead arise from 'an imputed promise to perform a legal duty.'" Def.'s Mot. at 17 (quoting *Woods*, 122 F. App'x at 991). Plaintiff insists that reliance on *Woods* is misplaced but provides no explanation. Pl.'s Resp. at 3.

Although the Government does not address Mr. May's assertions that he is an intended third-party beneficiary of the Amgen Settlement, it is clear that he is not. He alleges no facts suggesting that the parties to the settlement intended to confer upon him "the exceptional privilege" of third-party beneficiary status. *See Flexfab*, 424 F.3d at 1259 (citing *German All. Ins. Co.*, 226 U.S. at 230). And because Plaintiff does not demonstrate a contractual relationship, this Court lacks subject matter jurisdiction over the claim for breach of contract or the implied covenant of good faith and fair dealing. *See Anderson*, 344 F.3d at 1352; *Scott Timber Co.*, 692 F.3d at 1372.

### 4. Constitutional and Tort Claims

In addition to his contract claims, Plaintiff alleges that the Government violated 42 U.S.C. § 1983, the First Amendment, and the Fourteenth Amendment Equal Protection Clause. Compl. at 17–18. He also adds an allegation of "professional negligence." *Id.* at 18; *see also* Pl.'s Mot. for Default J. at 5–7 (asserting that Plaintiff is "legally entitled to . . . any availing tort damages" and that his claims are "akin to tort claims").

It is well settled that the Court of Federal Claims lacks subject matter jurisdiction to adjudicate any of these claims. *E.g.*, *Drake v. United States*, 792 F. App'x 916, 920 (Fed. Cir. 2019) ("The Court of Federal Claims . . . does not have jurisdiction to entertain federal civil rights violations because the protections afforded by 42 U.S.C. §§ 1981, 1983, and 1988 create liability only when injury occurs under *state* law."); *Clervrain v. United States*, No. 2022-1384, 2022 WL 1183768 at *1 (Fed. Cir. Apr. 21, 2022) (holding that "the Court of Federal Claims was clearly correct that it did not have jurisdiction over" claims alleging violations of 42 U.S.C. §§ 1981, 1982, or 1983 "because nothing in those provisions is fairly read to impose a money-mandating obligation on the United States") (collecting cases); *United States v. Connolly*, 716 F.2d 882, 887–88 (Fed. Cir. 1983) (holding that, "on any theory, the Claims Court lacks jurisdiction over [a plaintiff's] first amendment claim"); *LeBlanc*, 50 F.3d at 1028 (holding that none of "the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the doctrine of separation of powers" are "a sufficient basis for jurisdiction because they do not mandate payment of money by the government"); 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment . . . in cases *not sounding in tort*." (emphasis added)); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks . . . jurisdiction to entertain tort claims.").

### B. 12(b)(6) Challenge to Takings and Illegal Exaction Claims

Plaintiff alleges that the Government effected "[u]njust takings absent compensation," and that he "became financially insolvent" because he was "excluded from the 2012 settlement." Compl. at 17, ¶¶ 81–82; *see* Pl.'s Mot. for J. on the Pleadings at 4 (stating that the "Takings Clause of the Fifth Amendment is a money-mandating source for the purposes of Tucker Act jurisdiction"). Defendant contends that Plaintiff does not sufficiently allege the elements of a Fifth Amendment taking and that he fails to state a claim for which relief can be granted. Def.'s Mot. at 18–19.

The Government explains that, to establish a taking, a plaintiff must demonstrate that she possesses a vested property right protected by the Fifth Amendment. *Id.* at 19 (first citing *Brooks v. Dunlop Mfg. Inc.*, 702 F.3d 624, 628 (Fed. Cir. 2012); and then citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994)). Because a "property right in any cause of action does not vest until a final unreviewable judgment is obtained," and the *qui tam* complaint was dismissed, Defendant contends that the *qui tam* action cannot form the property interest underlying a takings claim. *Id.* (quoting *Brooks*, 702 F.3d at 628). The Government adds that "'a *qui tam* relator is . . . a *partial* assignee of the United States' under the FCA and, therefore, they are not the real party in interest." *Id.* (quoting *Vt. Agency of Nat. Res.*, 529 U.S. at 773). It concludes that, because "'the United States, not the relator, is the real party in interest in a *qui*

13

*tam* lawsuit,' the 'Government alone owns a *qui tam* claim.'" *Id.* (quoting *Nasuti v. United States*, No. 14-398C, 2014 WL 12543799, at *4 (Fed. Cl. Sept. 4, 2014), *aff'd*, 581 F. App'x 904 (Fed. Cir. 2014)).

Plaintiff's Response does not address the Government's legal arguments regarding the takings claim, except to note that *Nasuti* is not binding on this Court. Pl.'s Resp. at 3. However, the Response does elaborate on Mr. May's allegation that he had a cognizable property interest in his *qui tam* cause of action, which the 2012 settlement extinguished, and that it is "[p]lausible [that the] government used intellectual property from May's disclosure statement to compensate his former arbitration and *qui tam* attorneys" while "May got nothing." *Id.* at 18. Even if Mr. May had provided facts to substantiate this allegation "above the speculative level," *Twombly*, 550 U.S. at 555, the conduct he describes would sound in tort or official misconduct, which are beyond this Court's subject matter jurisdiction, *e.g.*, *Shearin*, 992 F.2d at 1197 ("It is well settled that the United States Court of Federal Claims lacks . . . jurisdiction to entertain tort claims."); *Fla. Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed. Cir. 1986) (stating that plaintiffs may not "recover damages for unauthorized acts of government officials" in this court).[6] Ultimately, Mr. May fails to plead facts demonstrating that he had a vested property interest or that the United States effected a taking without compensation.

Furthermore, while Mr. May's Response clarifies that illegal exaction is an alternative theory of relief, this claim also fails. Pl.'s Resp. at 17–18. A plaintiff may sustain a claim for illegal exaction when she has "'paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). Where a plaintiff "does not allege that he paid any money to the government," but rather that "his not receiving [money he claims to be owed] was in essence a payment sufficient to amount to an illegal exaction[,] . . . there was no exaction . . . because there was no payment." *Piszel v. United States*, 833 F.3d 1366, 1382 (Fed. Cir. 2016) (citing *Westfed Holdings, Inc. v. United States*, 52 Fed. Cl. 135, 153 (2002)). Here, Mr. May does not allege that he paid the Government a sum he now wants back; rather, he simply believes he is entitled to money he never received. Compl. ¶¶ 5, 23, 37, 60, 69. This is insufficient to maintain a claim for illegal exaction. Even if it were within the statute of limitations, this claim would fail under RCFC 12(b)(6).

---

[6] Mr. May points out that the same attorneys who terminated their representation in his *qui tam* complaint subsequently represented other relators who were signatories to the settlement agreement. Pl.'s Resp. at 9–12, ¶¶ 29–34; *see* Def.'s App. at 372, 374 (Amgen Settlement signature pages including Mr. May's former counsel). He speculates that the attorneys were "remunerated for their efforts which may have included sharing May's original source information." Pl.'s Resp. at 11–12, ¶ 41. Although such an allegation—that attorneys benefited certain clients by disclosing a different client's privileged information without consent—raises questions, it is beyond the purview of this Court to address.

### IV.     Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**, Plaintiff's Motion to Supplement the Record, Motion for Default Judgment, and Motion for Judgment on the Pleadings are **DENIED** as moot, and the case must be **DISMISSED**.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge